**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

DAVID BERNARD,

                              Petitioner,

                                                              **REPORT AND**
                                                              **RECOMMENDATION**

          -against-
                                                              14-CV-1758 (KAM)

CHRISTOPHER MILLER,

                              Respondent.
-------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On March 17, 2014, Petitioner David Bernard filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  *See* Pet., ECF No. 1.  After the case was administratively

closed, see ECF No. 9, the petitioner filed a new petition for a writ of habeas corpus on

September 28, 2015.  *See* Am. Pet., ECF No. 13.  He seeks relief from his November 17, 2009

convictions, following a trial by jury in the Supreme Court of Queens County (Lasak, J.), of

robbery in the first degree (four counts), robbery in the second degree (two counts), criminal

possession of a weapon in the second degree, criminal possession of a weapon in the third

degree, and criminal possession of stolen property in the fourth degree.  *See People v. Bernard*,

100 A.D.3d 916 (2d Dep't 2012).  On February 25, 2020, the Honorable Kiyo A. Matsumoto

referred the petition to me for a report and recommendation in accordance with 28 U.S.C. §

636(b).  Order, Feb. 25, 2020.  I recommend that the Petition be DENIED.

**I.     FACTUAL BACKGROUND**

On September 19, 2006, the petitioner, along with three young men, robbed a grocery

store located in Queens County.  Seventeen-year-old Jonathan Cuevas was in Brooklyn with his

friends, Jahfaar Lammy and Joel Beltran (who were twenty and sixteen years old, respectively),

when Beltran received a phone call.  After the call, Beltran asked Cuevas and Lammy if they

wanted to rob a store in Queens, and they both agreed.  Beltran stated that the petitioner, who

was thirty-six years old at the time, would pick them up.  Beltran and Cuevas had met the

petitioner a couple months prior through the petitioner's nephew, who was a classmate of theirs at school.  Tr. 270, 515-23, 571-80.

About a half hour later, the petitioner arrived in a Chevy Lumina, and the three men got in: Beltran in the front passenger seat; Lammy in the back seat behind the petitioner; and Cuevas behind Beltran.  Tr. 523-24; 571-72.  Cuevas did not observe or recall an armrest in the back seat.  Tr. 602; 605.

Once they arrived in Queens, the petitioner stopped by a store on Liberty Avenue, where the petitioner handed Cuevas and Beltran some money and told them to buy bandanas.  Tr. 524-26; 580-81.  After they bought the bandanas, the petitioner drove to another store on the same street, where he parked the car around the corner and got out.  Tr. 527-28.  The petitioner handed Cuevas a pair of batting gloves and a black 9-millimeter handgun.  Tr. 528-29; 565; 580-81.  The petitioner then said he would wait by the car with the engine running.  Tr. 528; 583.

The three young men started walking towards the store with the bandanas around their necks.  Tr. 529-33.  They asked each other why the petitioner was not going with them, but Lammy reasoned that someone would need to drive the getaway car.  Tr. 583, 613.  When they began to approach the store, they observed a guy "hanging out" near the front entrance to the store, and the men turned around and went back to the car.  Tr. 529-33; 583-84.  Cuevas reported that the petitioner looked "a little frustrated" when they returned, but they all got back in the car and drove away.  Tr. 532.

The men drove down Liberty Avenue looking for another robbery target.  Cuevas saw a grocery store with a man inside counting money, so the petitioner parked the car around the block and all four men got out.  Tr. 534-35; 585-86.  The petitioner removed the gun from the trunk and gave it to Cuevas.  Tr. 535.  The three young men then walked towards the store.  Tr. 535.

The store, located at 110-19 Liberty Avenue in Richmond Hill, was owned by Saleh Elmaliki.  Tr. 380-381.  At around 11:50 that evening, Elmaliki was at the cash register, separating the day's cash proceeds from Lotto ticket sales, scratch-off lottery sales, and grocery

2

sales into three separate piles bound with rubber bands.  Tr. 388-90.  His employee, Mohamed Himood, was busy mopping in the back of the store.  Tr. 391.

Cuevas, Lammy, and Beltran entered the store.  Tr. 391; 537-38.  Elmaliki could see the parts of the robbers' faces not covered by the bandanas.  Tr. 392.  Cuevas jumped over the counter, and Elmaliki believed that Cuevas squirted him with a water pistol.  Tr. 391; 419; 538. Cuevas testified that he was not carrying a water gun, but he did not know whether Lammy or Beltran had a water gun.  Tr. 558, 87.  Cuevas told Elmaliki to lay down on the floor, but Elmaliki struggled, so Cuevas hit him in the head with the handgun, knocking him to the ground. Tr. 395; 538-39; 589.

Lammy brought Himood from the back of the store and placed him face-down on the floor near Elmaliki.  Tr. 538-39.  Cuevas held Elmaliki and Himood at gunpoint while Lammy took the cash from behind the counter and placed it in a shopping bag.  Tr. 540-41.  Beltran took some cigars and placed them in the bag.  Tr. 541.  Cuevas went through Elmaliki's and Himood's pockets and took a wallet and cell phone from each man.  Tr. 542.

The robbers then placed Elmaliki and Himood in a walk-in refrigerator, fled the store, and returned to the petitioner's car.  Tr. 396, 542-44.  The petitioner took the gun from Cuevas and put it back in the trunk.  Tr. 545.  All four men got back in the car in their original positions, and the petitioner proceeded to drive towards Woodhaven.  Tr. 545-46.  The shopping bag with the robbery proceeds was placed in the center console between the two front seats, and the bandanas and stolen wallets were thrown out the window.  Tr. 546, 598-99.  After driving for about 30 minutes, the petitioner stopped on the side of the road in front of a fire hydrant.  Tr. 546-47.

After they stopped, the petitioner began splitting the money, handing each of the other men a stack of paper money bound with a rubber band.  Tr. 547-50, 598-99.  Cuevas gave Lammy one of the two cell phones and kept the other one.  They sat in the car for about twenty minutes, and then the petitioner pulled away to drive everyone home.  Tr. 550-51.

Meanwhile, about five or six minutes after the robbery, Elmaliki left the walk-in cooler

and called the police.  Tr. 396-97.  About fifteen minutes later, the police arrived and Elmaliki described the robbers to them.  Tr. 398-99.

At approximately 11:50 p.m., Police Officers Kevin Warmhold and Anthony Scapicchio were on patrol in a marked car when they received a report of the grocery store robbery.  Tr. 259-262, 436-37.  The report described the robbers as three male Hispanics or blacks, wearing dark clothing and masks and carrying a handgun.  Tr. 263, 438.  Warmhold and Scapicchio went to the store, spoke to officers already there, and canvassed the area for ten to fifteen minutes.  Tr. 263, 438-39.  After observing no suspects, they continued on routine patrol.  Tr. 263, 439.

Approximately one hour later, at 1:05 a.m., Officers Warmhold and Scapicchio were driving southbound on 80th Street when they saw the petitioner's car parked in front of a fire hydrant with its lights on.  Tr. 263-64, 439-41.  When the officers slowed to observe the vehicle, the petitioner pulled out and drove away.  Tr. 264, 440-41.  The officers noticed that the petitioner's car windows were illegally tinted, so they followed the car and looked for a safe place to execute a traffic stop.  Tr. 264, 441.

Upon seeing the police car, Cuevas, Lammy, and Beltran panicked and began hiding the robbery proceeds throughout the car.  Tr. 552.  Cuevas desperately hid the stolen cell phone in between a car seat and threw his cash to the floor.  Tr. 552.  The police car turned on its emergency lights and pulled the car over on 88th Road.  Tr. 265, 285, 441.

Warmhold approached the driver's side window, asked the petitioner for his license and registration, and instructed him to lower all of the tinted windows.  Tr. 267, 442.  The officers saw Beltran in the front passenger seat, Lammy seated behind petitioner, and Cuevas behind Beltran.  Tr. 267-69, 443-44.

Officer Warmhold spotted a thick, folded stack of cash, secured by a rubber band, sticking out of a pocket in the back of the driver's seat.  Tr. 271, 283.  Lammy was sitting right behind the money, so Warmhold asked him if the money was his, and he responded that it was his mother's "laundry money."  Tr. 272-73, 445.  Wormhold did not believe that the large stack of cash was laundry money, so Wormhold asked Lammy to step out of the car, and he frisked

4

him, recovering another large stack of cash and four rolls of coins totaling $821.00 and a cell phone.  Tr. 272-77, 319, 446-47.

The officers then searched the other three men, recovering another cash stack wrapped in rubber bands totaling $639.00, three rolls of coins, three cell phones, and nine wrapped cigars. Tr. 277-80, 314-15, 319, 344, 359, 447-50, 460-61, 556.  Two other cash stacks each totaling $639.00 were found in the vehicle: one near Cuevas' feet and another in the back pocket of the driver's seat. Tr. 321-24 451, 454.

Warmhold also recovered two cell phones that he had previously seen sticking out of the back seat.  Tr. 278, 451.  Cuevas insisted that both phones belonged to him.  Tr. 279.  When Warmhold opened one of the phones, however, he saw Arabic writing on the screen, so he asked Cuevas if he spoke Arabic.  Tr. 279, 451.  Cuevas responded that he did not speak Arabic and claimed that he had bought the phones from a friend.  Tr. 279, 452.

Officer Warmhold asked the petitioner if there was anything else in the car that he should know about.  Tr. 280.  The petitioner responded that he had nothing to hide, and invited Warmhold to "check the trunk[.]" Tr. 280, 452.  Inside the trunk, Officer Scapicchio observed the butt of a black handgun, wrapped in a camouflage cloth, sticking out of a toolbox.  Tr. 281, 453.

At approximately 1:50 a.m., Elmaliki arrived at the scene to identify the assailants. Tr. 286, 455.  The four suspects were each separately displayed to Elmaliki, and he recognized Cuevas, Lammy, and Beltran as the robbers.  Tr. 288-90, 400-01, 456-57.  He did not recognize the petitioner.  Tr. 294, 401.

Elmaliki viewed the recovered property and recognized his cell phone and the rubber bands that bound the cash bundles.  Tr. 291-92, 361, 400-05.  He also recognized the cigars as brands that he sold in his store.  Tr. 291-92, 361, 402, 428-29.  All four men were then placed under arrest.  Tr. 294-95.

A jury trial was held.[1]  *See* Tr.  The petitioner did not call any witnesses.  Instead, he placed into evidence a stipulation that the Chevy Lumina had been seized by the police and stored at the College Point Auto Pound but was released for salvage on August 27, 2008 and, therefore, no longer in the custody of the College Point Auto Pound.  Tr. 622.

### a.  The Verdict, CPT § 330.30 Motion, and Sentencing

On March 17, 2009, the jury found the petitioner guilty on all charges: four counts of first-degree robbery; two counts of second-degree robbery; second and third-degree criminal possession of a weapon; and fourth-degree criminal possession of stolen property.  Tr. 728-30.

Following the verdict, petitioner filed a *pro se* motion to set aside the verdict, under CPL § 330.30, arguing that: (1) his trial counsel (Anthony Battisti) was ineffective; (2) the trial court violated petitioner's right to a fundamentally fair trial and his Confrontation Clause rights by admitting hearsay evidence regarding the robbery of Himood, who did not testify; and (3) petitioner was improperly convicted solely on the uncorroborated testimony of an accomplice.  State Court Record ("SR"), ECF No. 36, at 1-12.

Prior to the sentencing hearing, the court appointed substitute counsel, Warren M. Silverman.  On July 28 and October 22, 2009, the court held an evidentiary hearing to determine whether the petitioner should be adjudicated a persistent violent felony offender under Penal Law § 70.08.  At the sentencing hearing on November 17, 2009, the court adjudicated petitioner a persistent violent felony offender after finding that he had been convicted of two prior violent felonies—a May 20, 1988 conviction for second-degree assault, which he contested at the hearing, and a May 18, 1998 conviction for second-degree burglary, which he did not contest.  State Court Transcripts 3 of 3 ("Sentencing Tr."), ECF No. 40-3, at 360-65.[2]

---

[1]     Co-defendants Cuevas, Lammy, and Beltran were charged identically to the petitioner.  On March 2, 2009, Cuevas pled guilty to first-degree robbery, and on May 19, 2009, was sentenced to six years' imprisonment.  On March 5, 2009, Lammy pled guilty to first-degree robbery, and on March 8, 2009, was sentenced to twelve years' imprisonment.  On March 6, 2009, Beltran pled guilty to first-degree robbery, and on April 8, 2009, was sentenced to eight years' imprisonment.  None of the co-defendants appealed their convictions.

[2]     Subsequent citations to the sentencing transcript will refer to internal pagination and not

6

At the sentencing hearing, the court asked Silverman whether he "adopted" the petitioner's *pro se* motion to set aside the verdict.  Sentencing Tr. at 8.  Although Counsel stated that he "had an opportunity to review it," he refused to adopt it because he did not believe the motion had any legal merit.  *Id.*  Counsel stated that his client "has asked me to ask the Court to permit him to file it and to pursue it pro se."  *Id.*  The court stated that "[n]ormally" it would require counsel to adopt the motion before the court even entertained the motion, but the court stated that it had "reviewed" the motion and concluded that it was without merit.  *Id.* at 8-9.

After reciting the petitioner's lengthy criminal history, the court sentenced him, as a persistent violent felony offender, to eight separate indeterminate terms of 25 years to life imprisonment and a sentence of one-year incarceration for criminal possession of stolen property.  *Id.* at 16-17.  All sentences were ordered to run concurrently.  *Id.* at 17.

### b.  Direct Appeal and Remittal for CPL § 330.30 Hearing

Petitioner filed a direct appeal brief, through counsel, in the Appellate Division, Second Department, asserting that: (1) the verdict was based on legally insufficient evidence and was against the weight of the evidence because Cuevas lacked credibility; (2) the court improperly denied petitioner's request for an adverse inference charge as a sanction for the People's failure to preserve the petitioner's car as evidence; and (3) substitute counsel was ineffective because he took an adverse position to the petitioner with respect to the *pro se* motion to set aside the verdict.  SR at 13-47.  The People filed an opposition brief.  *Id.* at 48-116.

In a decision and order dated February 28, 2012, the Appellate Division held that substitute counsel, "by taking a position adverse to his client on the motion to set aside the verdict pursuant to CPL 330.30, deprived [the petitioner] of effective assistance of counsel." *People v. Bernard*, 92 A.D.3d 952, 953 (2d Dep't 2012) (citations omitted) (compiled in State Record at 117-18).  The court held the appeal in abeyance and remitted the case to the trial court "for a new determination of the motion, upon which motion [the petitioner's] counsel on this

---

the pagination of the electronically filed document.

appeal shall represent him." *Id.*

After conducting a hearing in accordance with the Appellate Division's mandate, the Supreme Court denied the motion.[3]  The Appellate Division then unanimously affirmed the judgment of conviction.[4]  *People v. Bernard*, 100 A.D.3d 916 (2d Dep't 2012) (compiled in State Record at 119-20).  With respect to his first point, the court held that Bernard's sufficiency of the evidence claim was "unpreserved for appellate review" and, in any event, without merit.  *Id.* (citations omitted).  According "great deference" to the jury's superior ability to view the evidence and assess credibility of the witnesses, the court held that the verdict was not against the weight of the evidence.  *Id.*  Citing caselaw, the court held that "the fact that one of the People's witnesses had an unsavory background and testified pursuant to a cooperation agreement did not render his testimony incredible."  *Id.* at 916-17 (citations omitted).

Next, the court held that the trial court "did not improvidently exercise its discretion in denying [the petitioner's] request for an adverse inference charge."  *Id.* at 917.  The Appellate Division observed that a court's "determination of an appropriate sanction for the prosecution's failure to preserve evidence must be based primarily on the need to eliminate prejudice to the defendant."  *Id.* (citation and internal quotation marks omitted).  The Appellate Division found that the petitioner "was not prejudiced by the loss of the evidence at issue."  *Id.*

Finally, the Appellate Division found that the petitioner's ineffective assistance claim regarding his substitute counsel's conduct in connection with the *pro se* motion to set aside the verdict "has been rendered academic," because upon remitter to the trial court for a new determination of the motion, petitioner's "counsel on this appeal represented him and adopted his pro se motion."  *Id.*

---

[3]      The People represents that it has been unable to locate the hearing minutes or a copy of the trial court's final decision.  A brief discussion of the trial court's decision can be found in the subsequent opinion of the Appellate Division.  *See People v. Bernard*, 100 A.D.3d 916 (2d Dep't 2012) (compiled in State Record at 119-20).

[4]      The parties did not file supplemental briefing in the Appellate Division following the trial court's renewed decision on the motion to set aside the verdict.

8

Petitioner filed an application, through counsel, for leave to appeal to the Court of Appeals, raising all claims raised in the Appellate Division.  SR at 121-23.  The People opposed the application, SR at 124-29, and, on March 21, 2013, the Court of Appeals denied leave to appeal.  *People v. Bernard*, 20 N.Y.3d 1096 (2013) (SR at 130).

### c.   CPL § 440.10 Motion

Petitioner then filed with the trial court a *pro se* motion to vacate judgment under CPL § 440.10, see SR at 131-87, claiming that his pre-trial counsel was ineffective for failing to communicate a plea offer that carried a sentence of ten years' imprisonment.  SR at 133 ¶¶ 5, 10.  The petitioner attached an excerpt from a pre-trial hearing that was held on March 10, 2008, which was attended by the petitioner.  *Id.*  At the conclusion of the hearing, the court asked whether there had been any plea discussions in the case.  *Id.*  Assistant District Attorney Theodorou stated that she was "sure" that her predecessor who had the case before her made an offer.  *Id.*  The petitioner's counsel stated that the People "wanted a global plea," but that the parties "couldn't negotiate a global plea."  *Id.*   Additionally, the petitioner claimed in his 440.10 affidavit that he spoke with his counsel by telephone sometime in 2013 (over three years after the trial), and that counsel stated that sometime prior to trial, the People had offered the petitioner a guilty plea carrying a sentence of ten years' imprisonment, but that counsel had failed to convey that offer to petitioner.  SR at 136 ¶ 15.

The People filed briefing in opposition, including a sworn affirmation from Assistant District Attorney Rachel Buchter, who handled the relevant plea negotiations.  SR at 188-258.  ADA Buchter stated that a review of her notes revealed that, consistent with her regular practice, she "recorded [her] pre-indictment plea offers to the defendants in this case on case status sheets."  Buchter Aff., SR at 218.  She stated that her notes indicated that, on the three relevant court dates, her offer to the petitioner, "who was already a predicate violent felon prior to his arrest in this case, was a plea to a violent felony, in exchange for a promised sentence of from sixteen years to life in prison."  *Id.*  "My notes further indicate that I was willing to negotiate down to no lower than a promised sentence of from twelve years to life in prison, which is

consistent with my general recollection of the case." *Id.* ADA Buchter did not observe any notations in the District Attorney's file indicating that a pre-indictment offer was made to the petitioner consisting of a promised prison sentence of only ten years. *Id.* at 219. Further, ADA Buchter stated that there was no "fathomable reason" that she would have offered such a plea to the petitioner based on his history of criminal behavior and based on her belief that the petitioner was the ringleader in the crime. *Id.* Finally, ADA Buchter noted that a ten-year sentence would have been illegal given the petitioner's criminal history, supporting her belief that such an offer was not conveyed to the petitioner. *Id.* at 220.

In a decision dated February 4, 2015, the court denied the motion. SR at 259-65. The court found, *inter alia*: (1) "the allegations essential to support [the petitioner's] motion are made solely by [the petitioner] and are unsupported by any other affidavit or evidence"; (2) even assuming that the People extended an offer, the Petitioner had not sufficiently alleged that he was prejudiced by counsel's alleged failure to convey the offer because the alleged global plea offer was "contingent upon all of the co-defendant's accepting" the offer and there is no evidence that all of the co-defendants had been willing to accept the offer; and (3) "considering [the petitioner's] extensive criminal history, this Court would not have authorized a[] plea involving a ten-year prison sentence," such that, again, petitioner was not prejudiced by counsel's purported failure to convey the offer. SR at 262-64. The Appellate Division denied leave to appeal. SR at 392.

### d. Coram Nobis Motion

The petitioner then filed in the Appellate Division a *pro se* coram nobis motion, dated September 12, 2017, claiming that his appellate counsel was ineffective for failing to argue a number of claims, including that the traffic stop had been pretextual and thus was an unreasonable search and seizure and the showup identification procedure violated the petitioner's due process rights. SR at 393-453. The People filed briefing in opposition, see SR at 454-506, and the petitioner filed a reply. SR at 507-44. The Appellate Division summarily denied the motion. *People v. Bernard*, 158 A.D.3d 774 (2d Dep't 2018) (compiled in SR at 545). The

10

Court of Appeals denied leave to appeal. *People v. Bernard*, 31 N.Y.3d 1078 (2018).

### e. The Present Habeas Petition

Petitioner timely filed his initial *pro se* federal habeas petition, dated March 4, 2014, which repeated the three claims raised on direct appeal. Pet., ECF No. 1. Approximately one month later, the petitioner requested that the habeas case be stayed until the completion of his CPL § 440.10 motion in state court. Mot. Stay Pet., ECF No. 6. The District Court responded by ordering the clerk to "close the . . . case administratively to be reopened on letter of the petitioner. Order, ECF No. 9. On September 28, 2015, the petitioner informed the Court that the § 440.10 proceeding had concluded. Letter, ECF No. 12. The petitioner filed a *pro se* amended habeas petition that repeated the three claims asserted in his initial petition and added the claim from his § 440.10 motion that trial counsel was ineffective because he failed to convey a plea offer. Am. Pet., ECF No. 13. The case was reopened, and, on or about October 13, 2015, the court appointed the current CJA counsel. *See* Order, ECF No. 11; Notice of Appearance & Appointment Order, ECF Nos. 15, 16.

No action was taken on the habeas case for approximately two years. Then, on September 25, 2017, the petitioner moved *pro se* to stay the case while he pursued a coram nobis motion in the Appellate Division asserting that his appellate counsel on direct appeal had been ineffective. Mot. Stay, ECF No. 17. The respondent opposed the motion, see ECF No. 18, and the petitioner filed a reply. Resp., ECF No. 19. The stay motion was not immediately decided.

On November 21, 2017, petitioner filed a *pro se* memorandum of law in support of his habeas petition, which only addressed the claim regarding the preservation of the petitioner's vehicle. Mem. Supp., ECF No. 20. On March 22, 2018, petitioner moved *pro se* for the assignment of new habeas counsel. Mot. Appoint Counsel, ECF No. 22. The Court denied the motion and directed counsel to meet with petitioner to evaluate the petitioner's recent submissions to the court and submit a description of the relief that the petitioner was requesting. Order, May 8, 2018. On August 1, 2018, counsel filed written responses with the court, clarifying that the petitioner had previously requested a stay in his submissions electronically

11

docketed as numbers 17 and 19 so that he could exhaust his ineffective assistance of appellate counsel claim. Letter, ECF No. 27.[5] Counsel confirmed that the ineffective assistance claim was now fully exhausted because the state court had denied the petitioner's coram nobis motion. *Id.* Counsel further stated that the Fourth Amendment claim asserted in the petitioner's coram nobis motion (ECF No. 17) is not cognizable on federal habeas review; counsel stated that he discussed this with the petitioner and the petitioner "concurs." *Id.* Counsel further explicated that the memorandum docketed as number 20 asserted a due process claim regarding the preservation of the petitioner's car—counsel confirmed that this claim had been fully exhausted, raised in both the initial and amended petition and, thus, was currently pending. *Id.* Finally, counsel stated that he was investigating the petitioner's claim that his trial counsel was ineffective for failing to convey a plea offer. *Id.* The Court granted the petitioner two extensions.

On September 24, 2018, counsel requested another extension to finalize his investigation of the petitioner's ineffective assistance of trial counsel claim. Mot. Continue, ECF No. 31. The court denied the petitioner's request for a further extension and directed the respondent to respond to the petition. Order Denying Mot., Apr. 16, 2019.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), sets forth the standard that federal courts apply when reviewing

---

[5]    It is not clear whether the petitioner believes that he has properly asserted an ineffective assistance of appellate counsel claim in the current proceeding. The petitioner did not allege ineffective assistance of appellate counsel in his original habeas petition, see ECF No. 1, or in the amended petition, see ECF No. 13. Further, neither the petitioner nor his counsel made any effort to amend the pleadings to add an ineffective assistance of appellate counsel claim to this case. Thus, this Court finds that the claim is not properly before the Court. *See, e.g.*, *Uquinn Banks v. Miller*, No. 16-CV-7935 (RA), 2018 WL 6725307, at *1 (S.D.N.Y. Dec. 21, 2018) (refusing to consider habeas claim not asserted in petition); *Morris v. Smith*, No. 13-CV-1441 (GLS) (DJS), 2016 WL 4532160, at *1 (N.D.N.Y. Aug. 30, 2016) ("Because the petition controls the claims, and this claim was not raised in the petition, (Pet. ¶ 12), it was not before Judge Treece."). It bears noting that this claim was raised for the first time in 2017, years after the petitioner's conviction became final, so even if it was properly before the court, it would be time-barred. *See* 28 U.S.C. § 2244(d)(1) (providing for a one-year statute of limitations for habeas petitions).

12

state court decisions on habeas review.  Under that statute, when a petitioner seeks a writ of habeas corpus vacating a conviction for errors of law, the petitioner must show that the merits of her claim were adjudicated in state court and that the adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A decision is contrary to "clearly established Federal law, as determined by the Supreme Court of the United States . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

If the decision is not contrary to Supreme Court precedent, then the much more deferential "unreasonable application" test applies, and under that standard a petitioner may not receive "federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).  A state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  The Supreme Court has emphasized that the reasonableness of the application of the law is to be assessed objectively rather than subjectively.  *Id.*

For the reasons discussed below, the Court finds that none of the issues raised in the instant petition for habeas corpus state a claim for the writ and therefore the petition should be denied.

## III.   ANALYSIS

In his application for habeas relief, the petitioner raises three grounds for relief.  He argues that (1) the evidence was insufficient to convict him beyond a reasonable doubt in light of the lack of credibility of the People's cooperating witness; (2) he was denied a fair trial when the court refused to give an adverse inference charge as a sanction for the People's failure to preserve potentially exculpatory evidence; and (3) he was denied effective assistance of counsel when: (a) substitute counsel took a position adverse to him at the time of sentencing regarding

the *pro se* motion to set aside the verdict; and (b) pre-trial counsel failed to communicate a plea

offer to him and failed to advise him regarding whether to accept or reject the alleged offer.

        a.   <u>Sufficiency of the Evidence Claim</u>

      The petitioner argues that the evidence used to convict him was insufficient because the

People's evidence consisted "entirely" of "the testimony of one witness, the charged codefendent

who admitted participating in the crime." Am. Pet. at 4.  The petitioner argues that the co-

defendant's testimony was not credible because he "agreed to implicate petitioner in exchange

for a sentence reduction of 19 years." *Id.*  This claim was also raised on direct appeal.

      The Appellate Division found that the sufficiency claim was unpreserved for appellate

review.  *See Bernard*, 100 A.D.3d at 916 (citing CPL 470.05(2); *People v. Hawkins*, 11 N.Y.3d

484, 491-492 (2008); *People v. Gray*, 86 N.Y.2d 10 (1995)).  It is well-established that, in order

to preserve a sufficiency of the evidence claim, a defendant must move for dismissal in the trial

court and the argument must be "specifically directed" at the basis of the alleged error.  *Hawkins*,

11 N.Y.3d at 491-92; *see People v. Hines*, 97 N.Y.2d 56, 62 (2001); *People v. Logan*, 74 N.Y.2d

859, 860 (1989); *People v. Gomez*, 67 N.Y.2d 843, 845 (1986).  A general objection does not

preserve an argument for appeal.  *See People v. Gray*, 86 N.Y.2d 10, 20 (1995).  In *People v.

Hawkins*, for instance, the Court of Appeals found that the defendant's sufficiency argument was

unpreserved where he had previously argued to the trial court that the People "failed to prove

that [he] acted with Depraved Indifference Murder," and, on appeal, he argued that he acted

intentionally and not recklessly.  *Id.*

      Even though the petitioner moved for dismissal at the end of the People's case, the

petitioner merely argued that "the People's case lacks sufficient corroboration of the accomplice

testimony to allow th[e] case to go to the jury . . . ."  Tr. 633:6-7; *see also* Tr. 624.  On direct

appeal (like here), the petitioner argued that Cuevas lacked credibility because he was testifying

under the terms of a cooperation agreement that would dramatically limit his exposure for the

charged crimes.  *See* Pet'r's Direct Appeal Br. at 21-23 (SR at 36-38).  Because the petitioner

argued insufficient corroboration to the trial court, and not lack of credibility as he did on direct

appeal, the Appellate Division correctly determined that the petitioner's sufficiency argument was unpreserved for appellate review.

Generally, a federal habeas court may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011). A state law ground is an "adequate" bar to habeas review if it is "firmly established and regularly followed by the state in question." *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)). The state procedural rule applied by the Appellate Division here, CPL § 470.05(2), requiring a party to challenge the sufficiency of the evidence with specificity in order to preserve the claim for appeal, is firmly established and regularly followed. *See King v. Artus*, 259 F. App'x 346, 347 (2d Cir. 2008); *Mejia v. Artus*, No. 12-CV-2241 (VMS), 2016 WL 1305162, at *10 (E.D.N.Y. Mar. 31, 2016); *Woods v. Heath*, No. 12-CV-02175 (NGG), 2013 WL 6092804, at *10 (E.D.N.Y. Nov. 19, 2013). Therefore, this claim is procedurally defaulted.

A procedural bar may be overcome if the petitioner can establish good cause for the default and ensuing prejudice, or if the petitioner can show that a "failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Coleman*, 501 U.S. at 749-50. The petitioner has not alleged cause for his failure to preserve the sufficiency claim. Nor has the petitioner alleged a fundamental miscarriage of justice. Accordingly, the petitioner's sufficiency of the evidence claim rests on a procedural default.

It should be noted that even on the merits, however, the petitioner's claim is unreviewable because he asks the court to disturb the jury's credibility determinations. It is well-established that "[c]redibility determinations are the exclusive province of the jury and are beyond the scope of habeas review." *Lopez v. Superintendent of Five Points Corr. Facility*, No. 14-CV-4615 (RJS) (JLC), 2015 WL 1300030, at *12 (S.D.N.Y. Mar. 23, 2015) (collecting cases), *R&R adopted*, 2015 WL 2408605 (S.D.N.Y. May 20, 2015); *see also Scott v. Graham*,

15

No. 16-CV-2372 (KPF) (JLC), 2017 WL 2820061, at *21 (S.D.N.Y. June 29, 2017) (citing *Schlup v. Delo*, 513 U.S. 298, 330 (1995)), *R&R adopted*, 2018 WL 5257613 (S.D.N.Y. Oct. 22, 2018).  The petitioner's first claim should be denied.

            b.  <u>Due Process Claim</u>

        The petitioner next argues that he "was denied a fair trial when the court refused to give an adverse inference charge as a sanction for the People's failure to preserve petitioner's car which held potentially exculpatory evidence."  Am. Pet. ¶ 12.  The petitioner's trial counsel prepared an adverse inference charge that was preserved in the record.  *See* Tr. 722-23.

        At trial, the defense argued that the petitioner had nothing to do with the charged crimes because he was merely providing transportation to the young men.  *See* Tr. 636-653.  While the petitioner was driving on the night in question, the defense argued, he saw the young men walking on the side of the road.  The petitioner recognized one young man as his nephew's classmate, so he offered to give them all a ride home.  After they accepted his offer, the petitioner stopped his car near a fire hydrant and the young men got in.  Moments later, when the police initiated the traffic stop, the defense argued that Cuevas desperately hid the gun in the trunk of the car.  Cuevas was able to access the trunk, according to the defense, because the petitioner's car had been customized with a "fancy" sound system that could be accessed through a "pass-through" that was located in the armrest between the two back seats.  Tr. 509-10.  Defense counsel was not able to show the jury the condition of the trunk or the alleged pass-through because the police salvaged the car before defense counsel had an opportunity to inspect the vehicle.  Tr. 508, 11.

        The Appellate Division denied this claim on its merits.  *See Bernard*, 100 A.D.3d at 917 (SR at 119-20).  It held that "the Supreme Court did not improvidently exercise its discretion in denying his request for an adverse inference charge."  *Id.*  Further,

> [t]he Supreme Court's determination of an appropriate sanction for the prosecution's failure to preserve evidence "must be based primarily on the need to eliminate prejudice to the defendant" (*People v Rice*, 39 AD3d 567, 568-69 [(2d Dept. 2007)]; *see People v Kelly*, 62 NY2d 516, 520 [(1984)]).  The defendant

was not prejudiced by the loss of the evidence at issue (*see People v Rice*, 39 AD3d at 569; *People v Perez*, 255 AD2d 403, 403-404 [(2d Dep't 1998)]).

*Id.*

Ordinarily, a state trial court's failure to give an adverse inference instruction does not provide a basis for federal habeas relief. *See Martin v. Ercole*, No. 07-CV-7171 (KMK) (LMS), 2010 WL 8970852, at *11 (S.D.N.Y. June 18, 2010), *R&R adopted*, 2012 WL 4465854 (S.D.N.Y. Sept. 27, 2012); *Mena v. Smith*, No. 03-CV-3295 (GEL), 2004 WL 2071668, at *3 (S.D.N.Y. Sept. 16, 2004). To show that he is entitled to habeas relief, the petitioner need not merely show that the state court erred, but that the error "so infected the entire trial that the resulting conviction violates due process." *Olsen v. Doldo*, No. 16-CV-5366 (RA) (DF), 2020 WL 685707, at *28 (S.D.N.Y. Jan. 2, 2020) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)), *R&R adopted*, 2020 WL 635605 (S.D.N.Y. Feb. 11, 2020); *accord Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Additionally, because the Appellate Division decided this claim on its merits, the petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In this case, the petitioner cannot show that the failure to give the requested instruction rendered his trial fundamentally unfair for at least two reasons.

*First*, defense counsel was allowed to discuss the reason why evidence from the vehicle was not admitted at trial. Defense counsel read a stipulation into evidence demonstrating that the absence of evidence of the car at trial was due to the car being salvaged. Tr. 622. Defense counsel further argued in his summation that it was improper for the People to have salvaged the car in advance of trial. Tr. 651-52. The jury was, thus, aware that the People were responsible for the missing evidence, and jurors were free to draw credibility determinations accordingly. *See, e.g.*, Tr. 605 (defense counsel cross-examining Cuevas about whether he knew about the alleged "pass through" to the trunk); *Clanton v. Lee*, No. 14-CV-6024 (BMC), 2015 WL 5693718, at *9 (E.D.N.Y. Sept. 27, 2015) (denying habeas claim on failure to give adverse

17

inference charge where counsel "vigorously embraced" opportunity given by the trial court to argue that jurors should draw an adverse inference based on failure to preserve evidence).

*Second*, the absence of an adverse inference instruction did not render the trial fundamentally unfair in light of the absence of evidence about the alleged pass-through. The court clearly was sensitive to defense counsel's concerns regarding the People's loss of potentially exculpatory evidence. During trial, in an *ex parte* discussion with counsel, the court noted that the People had stated in a pretrial filing that "the vehicle in question[] can be inspected at a mutually agreed time and place by contacting the assistant district attorney." Tr. 507. The petitioner's trial counsel noted that he only became involved with the case approximately one week prior to the vehicle being salvaged, so he did not have an opportunity to inspect the vehicle. Tr. 506. Defense counsel noted that Cuevas' attorney, however, was able to inspect the vehicle during the period of approximately two years that the vehicle was held in state custody. Tr. 507. Defense counsel noted that Cuevas' attorney took pictures of the vehicle, but those pictures would not be relevant to the petitioner's defense: "It's the condition of the inside of the vehicle and whether or not Cuevas had access to the trunk of the car via the rear armrest in the back of the vehicle." Tr. 509. The court stated, "I don't understand what you just said. Whether Cuevas had access to the trunk through the rear arm rest?" *Id.* The court further inquired whether there was "something with the year and the make of the car that allows a passenger . . . ." *Id.* Defense counsel stated, "[i]t was a unique feature to this particular vehicle when my client had the stereo installed because there was certain equipment accessible through the armrest . . . ." Tr. 510. When the court inquired whether there was "someone prepared to testify to that[,]" defense counsel stated that his "client doesn't want to testify." Tr. 510. Defense counsel did not explain why the vehicle's actual owner, Tanya Bernard, could not testify regarding the unique interior of the vehicle.

As defense counsel conceded, it was not a typical feature of the make and model of the vehicle in question to contain a "pass-through" so that passengers sitting in the rear seat could easily access the trunk. Thus, without specific evidence regarding the "unique feature" that was

18

allegedly installed in the petitioner's vehicle, it would have been impossible for the jurors to make the required connection that was necessary for the defense theory to make sense. *See Jeremiah v. Artuz*, 181 F. Supp. 2d 194, 202 (E.D.N.Y. 2002) (denying habeas claim based on failure to give adverse inference charge where petitioner could not show prejudice).

Furthermore, as the court pointed out, the vehicle was available for inspection until August 2008.  While the petitioner's trial counsel did not reasonably have an opportunity to inspect the vehicle given his late appearance in the case, it is reasonable to infer that the petitioner's previous counsel did have an opportunity to inspect the vehicle.  In light of these circumstances, the trial court's failure to give the requested adverse inference instruction did not render the petitioner's trial fundamentally unfair.

> c.   Ineffective Assistance of Counsel Claims

Next, the petitioner alleges two ineffective assistance of counsel claims: first, that he received ineffective assistance of counsel when his counsel took an adverse position to him at sentencing; and second, he received ineffective assistance when his counsel failed to convey a plea bargain offer to him.

To show constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness and, but for counsel's alleged errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also Premo v. Moore*, 562 U.S. 115, 121 (2011). A petitioner must overcome the "strong presumption" that "counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 562 U.S. at 121 (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)).

> "'Surmounting *Strickland*'s high bar is never an easy task.' *Padilla v. Kentucky,* 559 U.S. 356, 371 [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland,* 466 U.S., at 689–690 [104 S.Ct. 2052]. Even under *de novo* review, the standard for judging counsel's representation is a

most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' *Id.,* at 689 [104 S.Ct. 2052]; see also *Bell v. Cone,* 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland,* 466 U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.,* at 689 [104 S.Ct. 2052]; *Lindh v. Murphy,* 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles,* 556 U.S., at 123, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123 [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard."

*Premo*, 562 U.S. at 122–23 (quoting *Richter*, 562 U.S. at 104–05).

### i. Trial counsel took an adverse position at sentencing

The petitioner claims that he "was denied the effective assistance of counsel after defense counsel took a position adverse to petitioner at the time of sentencing regarding petitioner's pro se [CPL § 330.30] motion to set aside the sentence."  Am. Pet. ¶ 12.  On direct appeal, the petitioner made the same claim and asked the Appellate Division to "hold the appeal in abeyance and return the matter to the trial court for the assignment of new counsel and a de novo determination of the CPL article 330 motion."  Pet'r's Direct Appeal Br. at 30 (SR at 45).  As discussed earlier, the Appellate Division granted the request and held the appeal in abeyance for a determination of the petitioner's motion.  Back on appeal, the Appellate Division correctly determined that the claim "had been rendered academic" after the case was remitted to the trial court and the petitioner's appellate counsel represented him and adopted his pro se motion. *Bernard*, 100 A.D.3d at 917.

20

Because the petitioner has already received all of the relief that he requested, his claim is moot and this Court lacks subject matter jurisdiction over the claim. Article III of the United States Constitution limits the federal courts to adjudicating actual "cases" and "controversies." *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982); *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (brackets and citation omitted). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

The petitioner asked for relief from the Appellate Division, received the requested relief from the Appellate Division, and therefore this Court lacks jurisdiction over the moot claim.

### ii. *Pre-trial counsel failed to communicate a plea offer*

Finally, the petitioner contends that his pre-trial counsel was ineffective because "he failed to convey a plea offer to petitioner and failed to advise him regarding whether to accept or reject the plea offer." Am. Pet. ¶ 12 (capitalization omitted). The petitioner asserted this claim in his § 440.10 motion, and the court denied the claim on its merits.

The Supreme Court has held that the right to effective assistance of counsel applies to the plea-bargaining context. In *Missouri v. Frye*, 566 U.S. 134, 145 (2012), the Court held that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.*; *see also Raysor v. United States*, 647 F.3d 491, 496 (2d Cir. 2011). Like in the ordinary *Strickland* context, however, a petitioner must show more than deficient performance by counsel in order to gain relief. A petitioner must show that he or she has been prejudiced by such deficient performance. In plea bargaining, the petitioner must show a "reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. Furthermore, a successful *Strickland* showing must demonstrate that the terms of a more favorable plea agreement would have actually been carried out: "Defendants

21

must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Id.*

Putting aside the Court's significant doubts as to whether the alleged plea offer was actually extended, the petitioner fails to show that the state court unreasonably applied well-established federal law as enunciated in cases such as *Strickland* and *Frye* because he cannot show that he was prejudiced by the alleged ineffective performance. Assuming, for the sake of argument, that the petitioner could show that a ten-year offer had been extended, he cannot show that he was prejudiced by his counsel's failure to convey such an offer because the trial court stated definitively that it would not have accepted a guilty plea on such terms. Furthermore, given the petitioner's consistent pleas of innocence, he cannot show a reasonable probability that he would have even accepted the alleged offer to plead guilty.

The trial court also served as the post-conviction court in this case. The court noted that the petitioner failed to allege facts sufficient to support his claim because he had not corroborated his allegations that a plea offer had been extended. Mem. Mot. Vacate J. at 4 (SR at 262). But even assuming that a plea offer had been extended, Justice Lasak stated, "[i]f defendant were to have pleaded guilty to the top count, as a persistent violent felon, he was required to be sentenced to an indeterminate prison term, which carried a maximum of life in prison." *Id.* at 5. Thus, a determinate sentence of ten years in prison was not an option. Even "if defendant had been offered a plea to one of the lesser, non-violent counts with which he was charged, the Penal Law requires that an indeterminate sentence be imposed." *Id.* "Thus, any [alleged] offer involving a ten-year sentence was not a legal one." *Id.*; *see also People v. Collier*, 79 A.D.3d 1162, 1163 (3d Dep't 2010) (holding that illegal sentence must be vacated), *aff'd*, 22 N.Y.3d 429 (2013); *accord People v. Sheils*, 288 A.D.2d 504, 505 (3d Dep't 2001) (collecting cases). The court made clear that it "would not have permitted a plea involving an illegal sentence." *Id.* at 7. Furthermore, "considering defendant's extensive criminal history, this Court would not have authorized a plea involving a ten-year prison sentence." *Id.*

22

Thus, the trial court stated that it would not have accepted the alleged plea bargain carrying a ten-year sentence because such a sentence would have been illegal and disproportionately low given the petitioner's criminal history.  Given the trial court's findings, the petitioner has failed to carry his burden of showing "a reasonable probability the plea would have been entered without . . . the trial court refusing to accept it . . . ."  *Frye*, 566 U.S. at 147.

Furthermore, the petitioner cannot show that *he* would have accepted an alleged guilty plea given his consistent protests of innocence.  During sentencing, for instance, the petitioner stated that that he had "always maintained that [he] had no part in this crime whatsoever." Sentencing Tr. 11, ECF No. 40-3.  He insisted that he stood "before this Court [a] wrongly convicted man."  *Id.*  In his *pro se* memorandum in support of the § 440.10 motion, the petitioner maintained that he was "convicted based upon his prior criminal record."  Mem. Supp. at 10 (SR at 140).  It is well-established that a court should look to a defendant's actual statements in an attempt to determine whether he would have agreed to an alleged plea agreement.  *See Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").  Based on the petitioner's consistent pleas of innocence, this Court finds that he has not met his burden of showing a reasonable probability that he would have pled guilty.  *See Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999) (holding petitioner's "insistence on his innocence is a factor relevant to any conclusion as to whether he has shown a reasonable probability that he would have pled guilty."); *accord Zandi v. United States*, 460 F. App'x 51, 53 (2d Cir. 2012); *Vargas v. United States*, 951 F. Supp. 2d 531, 553 (S.D.N.Y. 2013).

## IV.  CONCLUSION

This Court respectfully recommends that the Petition for a writ of habeas corpus be DENIED.  In addition, since the petitioner has not made a substantial showing that his constitutional rights were denied, it is respectfully recommended that a certificate of

23

appealability should not issue. *See* 28 U.S.C. § 2253(c)(2). The petitioner may request a circuit judge of the United States Court of Appeals for the Second Circuit to issue the certificate. Fed. R. App. P. 22(b)(1).

The respondent is directed to serve a copy of this Report and Recommendation on the petitioner and file proof of service with the Court within ten (10) business days.

## V.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
           /s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
       May 19, 2020

24